197 N.J. Super. 113 (1984)
484 A.2d 323
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD H. FORT, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TASIN S. MUHAMMED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 18, 1984.
Decided October 25, 1984.
*115 Before Judges ANTELL, J.H. COLEMAN and SIMPSON.
Joseph H. Rodriguez, Public Defender, for appellant Richard H. Fort (Arnold I. Budin, Designated Counsel, of counsel, and on the brief).
Richard H. Fort, appellant, filed a supplementary brief, pro se.
George L. Schneider, Prosecutor of Essex County, for respondent (Marc J. Friedman, Assistant Essex County Prosecutor, of counsel, and on the letter briefs).
Joseph H. Rodriguez, Public Defender, for appellant Tasin S. Muhammed (William E. Norris, Designated Counsel, of counsel, and on the brief).
The majority opinion of the court was delivered by J.H. COLEMAN, J.A.D.
The crucial question raised by this appeal is whether a plea agreement between the State and two codefendants, which requires them not to testify on behalf of defendants-appellants herein, automatically entitles defendants to a new trial. Stated differently, the core question is whether defendants were denied their right to compulsory process. We hold they were not.
An Essex County Grand Jury indicted William James Brown, Richard Henry Fort, Barry Madison, Carmen Martinez, and Tasin Salsabil Muhammed for conspiracy to possess and distribute controlled dangerous substances, possession and possession with intent to distribute. Prior to trial, motions to suppress evidence on behalf of all defendants were denied. Defendants *116 Brown and Martinez then entered guilty pleas to some of the charges then pending. As part of the plea agreements, the State extracted from Brown and Martinez a promise "not to testify on behalf of codefendants." Defendants Fort and Muhammed were tried to a jury and found guilty of all charges in the indictment. Defendants Fort and Muhammed were sentenced to terms of imprisonment aggregating ten years with five years of parole ineligibility. Post-sentencing motions for a new trial were denied. Defendants Fort and Muhammed filed separate notices of appeal alleging as plain error denial of compulsory process. We consolidated the appeals and temporarily remanded the matters to the Law Division to conduct a hearing on the alleged denial of compulsory process. On the remand the trial judge concluded there was no such denial. We now affirm that determination.
First, we consider both defendants' contention that a reversal is required because the prosecutor deprived them of their right to compulsory process in violation of both the federal and New Jersey constitutions. Compulsory process may be broadly defined as a defendant's right to compel the attendance of witnesses at trial and to elicit testimony on behalf of the defense. The contention is based upon the "no testimony agreement" which the State extracted from Brown and Martinez promising not to testify on behalf of other codefendants.
We have absolutely no doubt that the "no testimony agreement" was not intended to serve the ends of justice. Rather, it was an inexcusable attempt by the prosecutor to frustrate the ends of justice by trying to deprive defendants of their right to compulsory process guaranteed by both the Sixth and Fourteenth Amendments to the federal Constitution and New Jersey Constitution (1947), Art. I, ¶ 10. State v. King, 164 N.J. Super. 330, 337 (App.Div. 1978), certif. den. 81 N.J. 54 (1979). A prosecutor "must consistently refrain from any conduct that is lacking in the essentials of fair play." State v. D'Ippolito, 19 N.J. 540, 550 (1955). While we have no idea how *117 frequently prosecutors extract "no testimony agreements" from codefendants in the various counties, we strongly condemn the practice whenever and wherever it occurs. Our research, however, has disclosed no appellate case in this State condemning such agreements and none has been called to our attention. Compare State v. Hunt, 184 N.J. Super. 304 (Law Div. 1981) which involved much more than a "no testimony agreement."
Although the no testimony provision in the plea agreements with Brown and Martinez, which were accepted and approved by the same trial judge who presided at the trial of defendants here involved, is obviously improper and should have been rejected by the court, we nonetheless find defendants' contention unpersuasive. We hold that the prosecutor's misconduct does not require a reversal unless it is demonstrated that the prosecutor's conduct somehow prejudiced a defendant. To hold otherwise would require us to adopt an inflexible per se rule that would lead to unnecessarily harsh results.
Based on our careful study of the record we find no evidence that the prosecutor's misconduct prejudiced either defendant. The record reveals that Brown and Martinez entered guilty pleas on January 19, 1982 and were scheduled to be sentenced on February 26, 1982. Therefore, when defendants were tried between January 20 and January 27, 1982, Brown and Martinez had not been sentenced. Any testimony given by Brown and Martinez during defendants' trial could clearly incriminate Brown and Martinez. Moreover, even if they had been sentenced, they were free to prosecute appeals claiming reversible error. See generally State v. Biegenwald, 96 N.J. 630, 638-639 (1984), and State v. Blue, 129 N.J. Super. 8, 12 (App.Div.), certif. den. 66 N.J. 328 (1974) which acknowledge that judgments of convictions are not final until appeals have been concluded.
Our further study of the appellate record discloses that at no time was Brown or Martinez properly subpoened to testify in *118 court or otherwise placed on the witness stand. Counsel for Fort and Muhammed argue that any attempt to produce Brown or Martinez would have been useless given the fact that their attorneys had assured them that their clients would claim the Fifth Amendment. On the remand, a subpoena was produced which was addressed to Brown and Martinez but never served upon those prospective witnesses.
As the trial judge correctly concluded on the remand hearing, it was a matter of trial strategy, rather than the plea agreement, which led to the nonproduction of Brown and Martinez in court, either voluntarily or under a subpoena. This conclusion fairly leaps from the pages of the record. Martinez and Brown would have had a valid Fifth Amendment privilege since they had not been sentenced on their pleas and the time for an appeal had not commenced to run. We have no doubt that the trial strategy was substantially influenced by the knowledge that Brown and Martinez could and would raise their valid Fifth Amendment privileges if placed on the witness stand. Although the dissenting notes in closing that the trial might have been adjourned until such time when Brown and Martinez could no longer claim any risk of incrimination, it nowhere appears that either Fort or Muhammed requested this relief. It was also part of the trial strategy not to use a subpoena to force Brown or Martinez onto the witness stand out of the presence of the jury to see if they would assert the privilege or the "no testimony agreement" and then require the court to make a ruling.
Had Brown or Martinez been produced in court and counsel learned that either would not testify, an Evid.R. 8 hearing could have been requested. After the witnesses were sworn, they would have been required to explain their refusal to testify. Had they refused to testify based on fear of self-incrimination, that would have been a sustainable privilege. On the other hand, had they refused to testify out of fear of breaking the plea contract, the judge would have been required *119 to determine whether the "no testimony agreement" was enforceable. Clearly, the only correct ruling would have been to declare the "no testimony" portion of the agreement void as violative of our public policy as well as the federal and state constitutions. Had he failed to require them to testify notwithstanding the agreement, a reviewing court would be in a position to conclude that the agreement had significantly interfered with defendants' ability to call witnesses. Absent such a showing, we are constrained to follow our observations stated in State v. Harper, 128 N.J. Super. 270, 277 (App.Div. 1974); certif. den. 65 N.J. 574 (1974):
[t]rial errors which were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal. State v. Pontery, 19 N.J. 457 (1955); State v. Roscus, 16 N.J. 415 (1954); State v. Auld, 2 N.J. 426 (1949), aff'd on petition for habeas corpus 187 F.2d 615 (3 Cir.1951). "The defendant cannot beseech and request the trial court to take a course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial." State v. Pontery, supra 19 N.J. at 471; * * * [additional citations omitted.] [128 N.J. Super. at 277]
The cases relied on by defendants are distinguishable from the facts presented here. The common thread running through all the cases cited to us is the fact that the prospective witness was either placed on the witness stand or was in court ready to take the stand. The court forced, intimidated or coerced the prospective witness from the stand with its warnings, admonitions, or enforcement of a statute which precluded the witness from testifying. See Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); United States v. Thomas, 488 F.2d 334 (1973); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Here, the trial court took no affirmative action to preclude the testimony. On the contrary, no real attempt was made to place Brown or Martinez on the witness stand.
Furthermore, where a valid Fifth Amendment privilege is available to a prospective witness, only that witness may *120 claim it. In State v. Jennings, 126 N.J. Super. 70 (App.Div. 1972), certif. den. 60 N.J. 512 (1972), we stated
that the privilege against self-incrimination is personal to the individual claimant, and the election to invoke it must be exercised by the witness himself, on the stand and under oath, after hearing a question or questions addressed to him. It is not invocable by an attorney as his surrogate. [Id. 126 N.J. Super. at 75]
See also State v. Jamison, 64 N.J. 363, 375 (1974).
We discern no valid reason, on the one hand, for requiring a prospective witness to assert the Fifth Amendment privilege from the witness stand after being sworn, and on the other hand, not also requiring a prospective witness who wishes to assert a "no testimony agreement" from raising that claim from the witness stand after being sworn. In both instances, the prospective witness facially may have an objection to testifying. But in reality, he or she may not raise the objection from the witness stand after being sworn. The observations of our Supreme Court in a Fifth Amendment case, State v. Jamison, supra, have equal force and validity in this case. The rationale for requiring the prospective witness to claim the privilege from the stand is because "one can never tell when a witness may decide to answer questions, even one who has indicated a contrary intent to his counsel or to the court...." State v. Jamison, supra, 64 N.J. at 378-379. Here, the trial strategy completely circumvented the necessity of having the prospective witnesses testify or claim a privilege from the stand so that the judge would properly and impartially discharge his independent obligation of determining whether the claim had merit. Consequently, we find there was no denial of compulsory process.
In the initial brief filed by counsel on behalf of defendant Fort, he further contends:
1. THE STATE SUPPRESSED EXCULPATORY EVIDENCE THEREBY DENYING THE APPELLANT A FAIR TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
2. THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED AS A RESULT OF A WARRANTLESS *121 SEARCH (VIOLATION OF THE DEFENDANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION).
In the supplemental brief filed by counsel on behalf of defendant Fort following the remand hearing, defendant contends:
THE STATE DENIED THE APPELLANT'S RIGHT TO COMPEL THE COMPULSORY PROCESS OF WITNESSES FAVORABLE TO HIS DEFENSE IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION.
In the initial brief filed by counsel on behalf of defendant Muhammed, he further contends:
1. THE DEFENDANT'S SENTENCE WAS AN ABUSE OF DISCRETION AND ILLEGAL.
2. DEFENDANT'S SENTENCES SHOULD HAVE BEEN MERGED BY LAW (NOT RAISED BELOW).
3. THE STATE'S PREVENTION OF ACCESS TO THE TESTIMONY OF CO-DEFENDANTS VIOLATED BOTH FEDERAL AND STATE CONSTITUTIONS.
Following the remand, counsel for defendant Muhammed filed a supplemental brief in which he contends:
THE TRIAL COURT'S FINDINGS ON REMAND ARE IN ERROR.
We have carefully considered the remaining contentions raised by counsel for defendant Fort as well as the contentions raised in a pro se supplemental brief filed which asserts
1. TRIAL COUNSEL DENIED THE APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION.
2. COUNSEL DID NOT COMMUNICATE WITH DEFENDANT PRIOR TO PRETRIAL OR ANY OTHER TIME, WITH THE EXCEPTION OF THE DEFENDANT'S SCHEDULED COURT APPEARANCES.
3. COUNSEL REFUSED TO EXTEND REQUESTED MATERIALS NECESSARY FOR THE DEFENDANT'S ADEQUATE PREPARATION OF TRIAL.
4. COUNSEL FAILED TO OBJECT TO THE INFLAMATORY TESTIMONY BY THE STATE'S EXPERT WITNESS SGT. DONALD'S SUGGESTION TO THE JURY, THAT THE MERE PRESENCE OF THE DEFENDANT INFATICALLY [sic] MADE HIM A PARTICIPANT OR CONSPIRATOR IN AN OPERATION TO POSSESS AND DISTRIBUTE ILLEGAL DRUGS, *122 TO WIT COCAINE AND HEROIN WAS MANIFESTLY IMPROPER AND PREJUDICED TO THE DEFENDANT.
5. COUNSEL FAILED TO OBJECT WHEN THE STATE ERRED IN COLLECTIVELY CHARGING THE DEFENDANT WITH THE CDS POSSESSED BY CO-DEFENDANT MADISON, CONFISCATED FROM HIS PERSON.
6. COUNSEL FAILED TO GIVE DEFENDANT ADEQUATE ASSISTANCE OF COUNSEL IN LIGHT OF THE DEFENSE THAT WAS AVAILABLE.
7. COUNSEL FAILED TO OBJECT TO THE DISPARATE [sic] OF DEFENDANT'S SENTENCE.
We find all of these contentions are clearly without merit. R. 2:11-3(e)(2).
Defendant Muhammed further contends that his sentence represents an abuse of discretion. We find this contention is clearly without merit. R. 2:11-3(e)(2). The State concedes, however, that the substantive counts of possession of cocaine and heroin, and possession with intent to distribute should have merged with the conspiracy. Even though defendant Fort did not raise merger on appeal, we will grant him the same relief. Therefore, the sentences and payments to the Violent Crimes Compensation Board imposed on Counts Two and Three are vacated and those convictions are merged with the conviction under Count One for conspiracy. As modified, the sentences comply with the guidelines established in State v. Roth, 95 N.J. 334 (1984) and State v. Hodge, 95 N.J. 369 (1984).
As modified, the judgments of conviction are affirmed. The matter is remanded to the Law Division to enter amended judgments of conviction in accordance with this opinion.
SIMPSON, J.A.D., dissenting.
I respectfully dissent from the majority affirmance of the convictions of defendants Fort and Muhammed. I believe that each has had his constitutional right "to have compulsory process for obtaining witnesses in his favor" violated.[1] In all *123 other respects I agree with the determinations of my colleagues.
The effect of the plea bargains of Brown and Martinez on the constitutional rights of defendants Fort and Muhammed should be considered in the perspective of the underlying factual and trial situations. When the police entered apartment 407 at 98 Broad Street in Newark, they caught Brown and Martinez redhanded, sitting at a table bagging cocaine and heroin. All the evidence against Fort and Muhammed was circumstantial. They were seated on a sofa on the other side of the room. Testifying as a narcotics expert, Sgt. Robert Donald said there was no reason for them to be there unless they were somehow involved in the operation. The defendants testified that they had arrived at the apartment shortly before the search and seizure. They had come to meet a female named Pam, and one of them had to use the bathroom. Upon discovering the narcotics operation they started to leave, but it was too late to avoid the arrest. The jury obviously did not believe this story and convicted Fort and Muhammed on all counts of the indictment.
Plea negotiations were in progress when motions to suppress the seized evidence were heard and denied. The pleas of Brown and Martinez and the trial of Fort and Muhammed occurred on successive days immediately following the suppression hearings. In the afternoon of January 19, 1982, the prosecutor reported the plea bargains, supported by written "request to recommend disposition" forms that stated: "Defendant agrees not to testify on behalf of co-defendants." The trial judge specifically repeated this condition of the Brown and Martinez pleas and then accepted their pleas, with sentencing set for February 26, 1982. In ascertaining that there was a factual basis for Ms. Martinez' plea, pursuant to R. 3:9-2, the judge elicited the following statement from her:
Me and William Brown came inside with the drugs, sat by the table and were bagging it up. The other two came in. They was looking for this girl. They went to the bathroom then the police came in about five minutes, maybe less then that.
*124 It is obvious that had this testimony been repeated at the trial, it would have tended to support the story testified to by Fort and Muhammed. Jury selection for the Fort and Muhammed trial began immediately following the Brown and Martinez pleas. After the defendants' convictions, Brown and Martinez were sentenced in accordance with their plea bargains. Fort and Muhammed received stiffer sentences.
Separate appeals were filed by Fort and Muhammed. On January 17, 1984 these appeals were consolidated and the matter remanded for a hearing on the question of whether the plea agreements with Brown and Martinez resulted in a denial of defendants' rights to compulsory process. At that hearing, defendants' counsel testified that they did not call Brown or Martinez as witnesses at the trial because of the plea bargain conditions that Brown and Martinez not testify on behalf of their co-defendants. The attorneys did not subpoena Brown or Martinez and they did not request an Evid.R. 8 hearing before the trial judge. This was "a joint and mutual trial strategy" on behalf of co-defendants Fort and Muhammed. The trial judge concluded that there was no violation of defendants' Sixth Amendment rights because Brown and Martinez could have refused to testify by invoking their Fifth Amendment privileges against self-incrimination. The judge also opined that the "no testimony on behalf of co-defendants" condition of the plea bargains was "legal shorthand" that meant "the State was not prepared, was not extending immunity to these witnesses."
Nothing in the record of this case indicates that the State ever considered the possibility of offering Brown and Martinez immunity if they chose to testify for or against the defendants. Generally, immunity is granted by the State to compel testimony on behalf of a prosecution; it is not ordinarily available to a defendant who seeks to compel the testimony of a witness. See Annotation, "Right of defendant in criminal proceeding to have immunity from prosecution granted to defense witness." 4 ALR 4th 617 (1981). Instead of an immunity problem, this case *125 involves a typical plea bargain situation with a "prisoner's dilemma",[2] except that the prosecutor's actions have violated the Sixth Amendment rights to compulsory process of defendants Fort and Muhammed.
Plea bargaining is presently an accepted adjunct of the administration of the criminal laws, but it must be conducted fairly on both sides. State v. Thomas, 61 N.J. 314, 321 (1972). The terms and conditions of a plea bargain must be meticulously carried out. State v. Jones, 66 N.J. 524, 525-526 (1975). The process and procedures are set forth in R. 3:9-3. The American Bar Association Standards for Criminal Justice now permit plea discussions and plea agreements, but there is still a debate as to whether plea bargaining constitutes sound policy for the *126 criminal justice system.[3] It is clear that "[t]he conflict between administrative economy and constitutional values is intense."[4] There has been very little judicial interpretation of the compulsory process clause of the Sixth Amendment,[5] but this court has expressed agreement with Professor Westen that this constitutional guarantee must be expansively applied. State v. King, 164 N.J. Super. 330, 337 (App.Div. 1978). Just the opposite has occurred in this case, since the prosecutor has effectively denied compulsory process to Fort and Muhammed by muzzling Brown and Martinez in the plea bargains  with the same result as the judicial action in Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972).
Finally, the United States Supreme Court in Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) held that compulsory process was fundamental and essential to a fair trial, and that a state statute precluding persons charged or convicted as co-participants in the same crime from testifying for one another was invalid. If such legislative action is unconstitutional, it logically follows that executive and judicial action having the same effect is invalid. Brown and Martinez had a Fifth Amendment privilege to refuse to testify.[6] Fort and Muhammed had a Sixth Amendment right to compulsory process to secure their testimony. The conflict of constitutional rights resulted from actions by the prosecutor and trial judge in exercising their charging, plea bargaining, sentencing and calendaring *127 functions in the criminal justice process. The conflict could have been avoided by sentencing Brown and Martinez prior to the Fort and Muhammed trial, although this would obviously weaken the prosecutor's inherent advantage resulting from the above described "prisoner's dilemma." In any event, such potential conflict of constitutional rights of co-defendants should not be aggravated by prosecutorial and judicial action as in this case. I believe that the "no testimony on behalf of co-defendants" portion of the plea bargain with Brown and Martinez violated Fort and Muhammed's Sixth Amendment rights.
I would reverse and remand for new trials.[7]
NOTES
[1] The compulsory process clauses of the Sixth Amendment to the U.S. Constitution and Art. 1, ¶ 10 of the 1947 N.J. Constitution are identical.
[2] See R.D. Luce & H. Raiffa, Games and Decisions 95 (1957):

Two suspects are taken into custody and separated. The district attorney is certain that they are guilty of a specific crime, but he does not have adequate evidence to convict them at a trial. He points out to each prisoner that each has two alternatives: to confess to the crime the police are sure they have done, or not to confess. If they both do not confess, then the district attorney states he will book them on some very minor trumped-up charge such as petty larceny and illegal possession of a weapon, and they will both receive minor punishment; if they both confess they will be prosecuted, but he will recommend less than the most severe sentence; but if one confesses and the other does not, then the confessor will receive lenient treatment for turning state's evidence whereas the latter will get "the book" slapped at him. In terms of years in a penitentiary, the strategic problem might reduce to:

 Prisoner 2
 Prisoner 1: --- Not Confess Confess ---
 Not Confess | 1 year 10 years for 1 and |
 | 3 months for 2 |
 | |
 Confess | 3 months for 1 8 years each |
 | and 10 years |
 | for 2 |
 --- ---

The problem for each prisoner is to decide whether to confess or not. The "prisoner's dilemma" is that, without collusion between them, the rational action for each individual is to confess.
[3] See History and Commentary to Standard 14-3.1, "Plea Discussions and Plea Agreements," 3 ABA Standards for Criminal Justice at 14-63 to 14-69 (2d ed. 1980)
[4] Note, "The Unconstitutionality of Plea Bargaining," 83 Harv.L.Rev. 1387, 1410 (1970)
[5] Westen, "Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases," 91 Harv.L.Rev. 567, 586 (1978).
[6] This is because they had not yet been sentenced, although they had pleaded guilty pursuant to the plea bargain.
[7] Since Brown and Martinez have by now received the full benefits of their plea bargains, there would be no Fifth Amendment problem on retrials of Fort and Muhammed. In other cases, prosecutors and trial judges would be well advised not to accept plea bargains with "no testimony on behalf of co-defendants" clauses unless specifically approved by the New Jersey Supreme Court by rule or decision.