STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. RICHARD HENRY FORT, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. TASIN SALSABIL MUHAMMAD, DEFENDANT-APPELLANT.

Argued September 9, 1985—Decided December 11, 1985.

*Arnold I. Budin*, Designated Counsel, argued the cause for appellant Richard Henry Fort (*Thomas S. Smith, Jr.*, Acting Public Defender, attorney).

*William E. Norris*, Designated Counsel, argued the cause for appellant Tain Salsabil Muhammad (*Thomas S. Smith, Jr.*, Acting Public Defender, attorney).

*Marc J. Friedman*, Assistant Prosecutor, argued the cause for respondent (*George L. Schneider*, Essex County Prosecutor, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

As part of their plea agreement, co-defendants were required by the prosecutor not to testify for defendants. In affirming defendants' convictions, the Appellate Division acknowledged

that the "no testimony" restriction violated defendants' right to compulsory process, but found that the defendants had not been prejudiced by the restriction. 197 *N.J.Super.* 113 (1984). One judge dissented, and defendants appealed of right on the compulsory process issue. *R.* 2:2–1(a)(2). We denied petitions for certification on other issues raised by defendants Fort, 101 *N.J.* 213 (1985), and Muhammad, 101 *N.J.* 216 (1985), and now reverse the judgment of the Appellate Division.

I

On September 21, 1981, Newark Police received information that narcotics were being prepared for distribution at Apartment 407, 98 Broad Street. Three detectives stationed themselves outside the apartment, where they overheard a conversation concerning drug-related activities. When co-defendant Barry Madison left the apartment a few minutes later, the detectives seized him and entered the room.

Inside the room were four individuals: Henry Fort and Tasin Muhammad (sometimes described as "the defendants") and William Brown and Carmen Martinez (sometimes described as "the co-defendants"). Brown and Martinez were seated at a table bearing heroin, cocaine, and drug paraphernalia. Fort and Muhammad were seated across the room on a couch. The detectives arrested everyone and searched Madison, who was carrying a key and a rent receipt for the apartment, as well as twenty glassine envelopes containing heroin. A search of Fort and Muhammad disclosed that neither possessed any drugs or drug paraphernalia, but Fort was carrying $127.

The State contends that the defendants were part of the drug distribution activities, but the defendants stated that they were visiting the apartment to find a girl named Pam. According to Fort and Muhammad, when they arrived at Apartment 407, they were told that Pam was absent but might soon return. The defendants requested the use of the bathroom, and were permitted to wait in the apartment. While Fort was in the

bathroom, Brown removed a newspaper from the tabletop, thereby revealing the narcotics. When Muhammad realized that the co-defendants were packaging narcotics, he told Fort, and they decided to leave. The co-defendants, however, told them to wait to avoid continued coming and going from the apartment. Madison then walked out of the apartment and into the arms of the Newark Police.

The Essex County Grand Jury indicted all defendants for conspiracy to possess and distribute controlled dangerous substances, possession of controlled dangerous substances, and possession with intent to distribute. Brown and Martinez entered into a plea agreement in which the State recommended reduced jail terms without parole ineligibility.

At the core of this case is an additional term of the plea agreement in which Brown and Martinez agreed not to testify on behalf of Fort and Muhammad. Defendants contend that the "no testimony agreement" deprived them of the testimony of Brown and Martinez and thereby violated the compulsory process clauses of the sixth amendment to the United States Constitution and article 1, paragraph 10 of the New Jersey Constitution.

In support of their contention, they point to the following in-court statement made by Martinez at the time she pled guilty:

Me and William Brown came inside with the drugs, sat by the table and were bagging it up. The other two came in. They was looking for this girl. They went to the bathroom then the police came in about five minutes, maybe less than that. [197 *N.J.Super.* at 123.]

When entering his guilty plea, Brown made no mention of the defendants.

Defendants went on trial the day after the co-defendants pled guilty. Muhammad's counsel, who was present when Martinez and Brown entered their pleas, served a subpoena on Brown, who was confined in jail. The subpoena directed Brown to appear at Muhammad's trial, but Brown stated that he would not violate the plea agreement by testifying for defendants.

Muhammad's counsel did not subpoena Martinez because her attorney informed him that the plea agreement prevented her from testifying. Neither Brown nor Martinez had been sentenced at the time of defendants' trial, and Muhammad's counsel decided not to enforce the subpoenas because of the adverse inference the jury might draw if Brown decided, in the attorney's words, "to take the fifth." Fort's counsel concurred in the decision not to enforce the subpoenas. Hence, defendants did not call Brown or Martinez as witnesses at the trial.

The jury found defendants guilty on all counts, and each defendant was sentenced to ten years' imprisonment, with five years' parole ineligibility. By comparison, the co-defendants received the following sentences without parole ineligibility: Brown, ten years; Madison, five years; and Martinez, four years.

Defendants appealed, and the Appellate Division remanded the matter for a hearing regarding the denial of compulsory process. On remand, defendants' counsel testified that they did not call Brown and Martinez as witnesses because of the restriction in the plea agreement. The trial court acknowledged that the State had no right to prohibit the testimony of any witness, but the court interpreted the prohibition as a declaration by Brown and Martinez that they would invoke their fifth amendment privilege against testifying. The court concluded that the plea condition did not chill the defendants' efforts in securing the testimony of the co-defendants, and therefore did not violate the defendants' constitutional right to compulsory process.

With one judge dissenting, the Appellate Division affirmed. The majority recognized that the "no testimony agreement" was "an inexcusable attempt by the prosecutor to frustrate the ends of justice by trying to deprive defendants of their right to compulsory process guaranteed by both the Sixth and Fourteenth Amendments to the federal Constitution and New Jersey Constitution (1947), Art. I, ¶ 10." 197 *N.J.Super.* at 116.

Nonetheless, the court ruled that a showing of prejudice to the defendants from the prosecutor's misconduct was a prerequisite for reversal. Because the court found that the failure to enforce the subpoenas resulted from defendants' trial strategy not to call Brown or Martinez, it declined to order a new trial.

The dissent recognized that the co-defendants could have invoked their privilege against self-incrimination, but concluded that "by muzzling Brown and Martinez in the plea bargains", the State denied defendants their right to compulsory process. *Id.* at 126.

## II

The sixth amendment to the United States Constitution provides that an accused in a criminal prosecution has the right "to have compulsory process for obtaining witnesses in his favor." Through the due process clause of the fourteenth amendment, that right applies to the states. *Washington v. Texas*, 388 *U.S.* 14, 17–18, 87 *S.Ct.* 1920, 1922–23, 18 *L.Ed.*2d 1019, 1022–23 (1967). In virtually identical language to the United States Constitution, the New Jersey Constitution also guarantees the right of compulsory process to a criminal accused. *N.J. Const.* of 1947 art. I, ¶ 10.

In *Washington v. Texas, supra*, the United States Supreme Court found violative of the sixth amendment, as applied through the fourteenth amendment, two state statutes that prohibited co-indictees from testifying for one another, although they were free to testify for the state.

Chief Justice Warren, writing for the Court, stated:

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

· [388 *U.S.* at 19, 87 *S.Ct.* at 1923, 18 *L.Ed.*2d at 1023.]

Five years later, the Court reversed a state conviction because the trial judge had used such "unnecessarily strong terms" in warning a defense witness about perjury that he "effectively drove the witness off the stand, and thus deprived the petitioner of due process of law under the fourteenth amendment." *Webb v. Texas*, 409 *U.S.* 95, 98, 93 *S.Ct.* 351, 353, 34 *L.Ed.*2d 330, 333 (1972). Although the Court relied on *Washington v. Texas*, it predicated its decision not on the sixth amendment guarantee of the right to compulsory process, but on the fourteenth amendment due process protection. *Id.*

Since that time, federal courts have relied variously on the sixth amendment and the due process clauses of the United States Constitution to reverse convictions when improper government conduct has impinged on a defendant's right to offer witnesses in his favor. *See, e.g., United States v. Goodwin*, 625 *F.*2d 693, 702–03 (5th Cir.1980) (prison officials' threats against defendant's witnesses violated his right to due process); *United States v. Hammond*, 598 *F.*2d 1008, 1012–15 (5th Cir.1979) (FBI agent's threat of retaliation in other cases pending against defense witnesses deprived defendant of his right to due process); *United States v. Morrison*, 535 *F.*2d 223, 226–28 (3rd Cir.1976) (Assistant United States Attorney's repeated threats of possible charges against a defense witness violates defendant's due process rights and sixth amendment right to compulsory process); *United States v. Thomas*, 488 *F.* 2d 334, 335–36 (6th Cir.1973) (defendant denied due process when Secret Service agent told witness he would be prosecuted if he testified on defendant's behalf); *Bray v. Peyton*, 429 *F.*2d 500, 501–02 (4th Cir.1970) (denial of due process and sixth amendment right to compulsory process when the prosecutor directed the arrest of one of the defendant's witnesses).

Courts from other states also have reversed convictions on the ground that the prosecution has deprived the defendant of the right to due process or the sixth amendment right to call witnesses. *State v. Shapiro*, 50 *N.Y.*2d 747, 757–62, 431 *N.Y.S.* 2d 422, 427–30, 409 *N.E.*2d 897, 903–05 (1980) (prosecutor's

repeated threatening of a defense witness with possible conviction of perjury denied defendant his due process and sixth amendment right to compulsory process); *State v. Brown*, 543 *S.W.*2d 56, 58–59 (Mo.Ct.App.1976) (repeated threat of prosecution to prevent witness from testifying deprived defendant of due process). Underlying the federal and state cases is the principle that the refusal of a defense witness to testify must be voluntary and that the state may not prevent a witness from testifying for the defendant.

In a case with facts similar to those in the instant matter, the United States Attorney imposed on the guilty plea of a co-defendant a condition that he would not testify for the defense. *United States v. Henricksen*, 564 *F.*2d 197 (5th Cir.1977). On appeal, the Department of Justice confessed error and joined in the defendant's request for a reversal and remand. The Court found that the imposition of the condition interfered with the co-defendant's free choice to testify and thereby violated the due process clause. *Id.* at 198. Consequently, the court accepted the confession of error and reversed the conviction.

Similarly, the Law Division has found to be violative of public policy a condition in a plea agreement that the co-defendant "not give exculpatory testimony in favor of Hunt [the defendant] at his trial." *State v. Hunt*, 184 *N.J.Super.* 304, 309 (1981). The inclusion of that condition together with other acts of prosecutorial misconduct led the court to reverse the defendant's conviction.

In this case, the State acknowledges that a prosecutor should refrain from extracting an agreement not to testify as a condition of a plea bargain, but seeks to salvage the convictions by contending that the defendants have not established that they were prejudiced. We disagree. A "no testimony" agreement has the clear capacity to prejudice a defendant. Here, the testimony of Martinez, as evidenced by her sworn testimony in support of her guilty plea, would have been favorable to defendants. Because the trial turned on the credibility of the

defendants' explanation for their presence in the apartment, her testimony was critical. Prejudice is apparent. Thus, we reject the conclusion of the Appellate Division, which found no evidence of prejudice. 197 *N.J.Super.* at 117.

Nor are we persuaded that defendants should be foreclosed because, as the Appellate Division found, defense counsel elected as a matter of trial strategy not to call co-defendants to the witness stand. *Id.* at 118. In reaching that conclusion, we find to be unsatisfactory the Appellate Division's suggestion of an evidentiary hearing to determine the reason co-defendants failed to testify. *Id.* at 118–20.

Once the State extracts a promise not to testify as a condition of a plea agreement, it is practically impossible to determine whether a witness refused to testify because of the privilege against self-incrimination or because of a desire to perform the promise. To secure the benefit of the agreement, a defendant must meticulously satisfy the conditions of the plea. *See, e.g., State v. Marzolf,* 79 *N.J.* 167, 183 (1979); *State v. Jones,* 66 *N.J.* 524, 525–26 (1975). Consequently, a defendant who announces the intention "to take the fifth," as Brown declared in this case, may be effectuating or masking compliance with the "no testimony" condition. Stated otherwise, one method of preserving rights under the plea agreement is to assert the privilege against self-incrimination. As a result, we cannot ascribe the loss of the co-defendants' testimony to trial strategy, rather than to the restriction in the agreement.

To conclude, we find that the "no testimony" agreement violated defendants' constitutional rights to due process and to present witnesses in their favor. Underlying this conclusion is our belief that the trial, although inevitably an adversarial proceeding, is above all else a search for truth. That quest is better served when the State does not suppress the truth by sealing the lips of witnesses.

The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for further proceedings.

*For reversal and remandment* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.