280 N.J. Super. 239 (1995)
655 A.2d 84
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GIBBON FARQUHARSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 22, 1995.
Decided March 16, 1995.
*241 Before Judges PRESSLER, CONLEY and NEWMAN.
Susan L. Reisner, Public Defender, attorney for appellant (Leeann Cunningham, Designated Counsel, on the brief).
Ronald S. Fava, Passaic County Prosecutor, attorney for respondent (Gary H. Schlyen, Chief Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by CONLEY, J.A.D.
Defendant was convicted of various drug offenses for which he was sentenced, on the State's motion for an extended term, to an *242 aggregate ten year custodial term with a five year parole disqualifier. The required fines, penalties and driver's license revocation were also imposed. On appeal, in addition to claiming without merit that his sentence is excessive, defendant contends that the inability he encountered before and during trial to obtain the address of co-defendant so that she could be compelled to appear and testify deprived him of his constitutional right to compulsory process and should have led to a granting of his motion to dismiss the indictment. Under the particular circumstances here, not the least of which consisted of less than enthusiastic prosecutorial cooperation, and despite the involvement of federal governmental officials and their outright refusal to assist, we are of the view that the prosecutor cannot have it both ways. If he wishes to pursue the charges against defendant, he cannot stonewall defendant's diligent efforts to obtain the presence of the witness.
The facts that led to defendant's drug arrest and subsequent convictions are the following. During police surveillance, defendant was seen engaging in an exchange of "paper money" for a "small object" with co-defendant. According to the officers' version, defendant was the seller. When co-defendant was arrested she had two bags of cocaine in a pocket. Before defendant was arrested and after the alleged transaction with co-defendant, the officers claimed that they saw him go into a building, come back out shortly thereafter and take a tissue paper out of his pocket. He purportedly dropped it on the ground and walked away. Just before he was arrested, defendant also dropped a cigarette box on the ground which contained eight baggies of marijuana. The cigarette box was retrieved but a search of the area where the tissue was dropped was unsuccessful. The surveillance officer, however, who had several weeks before been involved in an automobile accident with defendant resulting in damage to his police vehicle, asserted that when he went to the location he was able to find a rolled-up white tissue paper containing a baggie with crack cocaine. Defendant admitted the marijuana was his but denied possession or distribution of the cocaine. He admitted that he had met co-defendant in the street but denied selling her *243 drugs. He said that as they were talking she had dropped a shopping bag which he picked up for her.
Long before his trial, defendant commenced extensive efforts to procure co-defendant as a witness. According to his public defender at the time of a preindictment hearing, co-defendant "vehemently" denied purchasing drugs from defendant. To say she was a crucial defense witness is to put it mildly.
In early 1992, defendant and co-defendant both received a plea offer. Counsel asserts that based upon his experience with the Passaic County Prosecutor's office, the normal policy would be that both would be treated as a "package" so that neither could take advantage of the plea offer unless the other did. Interestingly, the prosecutor has never denied this policy. Counsel discovered, however, in the fall of 1992 that co-defendant had entered a plea and had received a probationary sentence. When he contacted the Passaic County Probation officer assigned to co-defendant, he discovered that she had not been reporting and that her whereabouts was not known. He was told that the probation officer had been contacted by a Federal Drug Enforcement Special Agent who claimed that co-defendant had been admitted to the Federal Witness Protection Program and that the trial court would be formally so advised so that her probationary status could be revised. Such notice was never received and, as far as we can tell, co-defendant's noncompliance with her probation has never been pursued by the probation officials.
Obtaining this information, defense counsel commenced further efforts to ascertain co-defendant's whereabouts, status, and/or appearance, including serving a subpoena upon the D.E.A. Cooperation with both federal and state officials was nonexistent, even to the extent of either confirming or denying co-defendant's status in the Federal Witness Protection program. In November 1992, counsel filed a motion seeking, among other relief, an order directing the State to produce the current address of co-defendant, to produce her at trial, and to explain the circumstances of her plea and her entry into the Federal Witness Protection *244 program. Counsel also, pursuant to the Uniform Act to Secure the Attendance of Witnesses From Within or Without a State in Criminal Proceedings (Uniform Witness Act), N.J.S.A. 2A:81-18 to 23, requested that co-defendant be certified as a material witness and that her production pursuant to N.J.S.A. 2A:81-20 be ordered.
The following is an exchange that occurred between the trial judge and the prosecutor that is fairly reflective of the tenor of the prosecutor's position on the motion:
[PROSECUTOR]: Of course, there's no authority for this request that the defense attorney is citing. He cites a general case of Brady v. Maryland.

But there is no case that he cites in his brief even come close to supporting the position he's asking for.
THE COURT: It's a probation officer. The probation officer knows this witness is in the Witness Protection Program. And you come up here and say, how can I know. Well, the Probation Department knows.
[PROSECUTOR]: Would you like me to talk to the probation officer and verify 
THE COURT: That's a thought.
[PROSECUTOR]: Why should I, No. 1, why should I accept what the defense attorney is saying.
THE COURT: Because lawyers try to settle cases, try to resolve cases. It seems to me that if this witness, if you know  maybe you know where this witness is, maybe.
[PROSECUTOR]: I don't know where this witness is.
THE COURT: You're telling me that.
[PROSECUTOR]: I'm telling you that.
THE COURT: What have you done to try and find out this witness 
[PROSECUTOR]: I have done nothing.
THE COURT: How do you know? You don't know where the witness is?
[PROSECUTOR]: I can go to the last address. You would like me to do that?
THE COURT: No.
[PROSECUTOR]: Would you like me to find out the last employer that the witness had?
THE COURT: The point I'm making 
[PROSECUTOR]: Talk to the probation officer.
Can I represent the probation officer knows what somebody told that officer? It's hearsay.
Is that proof your Honor  I'm assuming arguendo that that statement is accurate.

*245 THE COURT: The problem is, the problem is you've done nothing.
[PROSECUTOR]: Why should I do anything?
THE COURT: Because that's what lawyers do, things.
[PROSECUTOR]: I don't want to settle this. There's nothing to settle.
The defense attorney's requests are outrageous. There's no case law to support it. They never even notified the Federal authorities, which I think he should do.
Don't you think the interested party might be the U.S. Attorney's office; don't you think they might have something, an interest in this? There is a Federal statute.
Does the Court know very much  I don't know very much about the Federal statute. I don't deal with it at all.
The prosecutor's position was that he did not know anything about the matter and that he had no obligation to find out.
Defendant's motion was granted to the extent that the prosecutor was directed in part to provide co-defendant's last known address, determine whether she was in the Witness Protection Program and if so whether that was a factor in her plea offer. The trial judge declined to declare her a material witness pursuant to the Uniform Witness Act. He did, however, recognize that if she were not in the Witness Protection program "that's a whole different situation".
In response to the order that was entered in connection with the motion, the State's only response was that it had no information as to co-defendant's whereabouts, that as far as the prosecutor knew the State had not been involved in co-defendant's placement in the Witness Protection program and that her entry into that program could not be confirmed or denied. Defense counsel's subsequent subpoena upon the D.E.A. and request for the production of co-defendant for trial and production of her present address pursuant to 28 C.F.R. § 16.21, et seq., providing for the production or disclosure of information contained in the Department of Justice files, was equally fruitless. He thus moved to dismiss the indictment or alternatively for a hearing to ascertain the efforts of the State and/or an explanation for its inability to obtain the presence of the witness. Although we do not have a transcript of the argument, if any, on that motion or an order disposing of it, we are told it was denied.
*246 At the beginning of the trial in September 1993, the motion was renewed. During the arguments thereon, the prosecutor for the first time represented that it had been determined that co-defendant was not in the Federal Witness Protection program or in "any program" but that she "happens to be working for the D.E.A. out of state in Maryland and ... is not intending to come back to the State of New Jersey and the agents refuse to supply any current address to us at this point." In response to this, the trial judge observed:
So, at this point she's out of state based upon the information that you gained, she is cooperating in some manner with some agency of the Federal Government.
So, she's no more available to you than she would be ... to the defendant.
He then denied the motion to dismiss the indictment. Despite the fact that Maryland has adopted the Uniform Witness Act, the trial judge did not consider the availability of N.J.S.A. 2A:81-20 to obtain her presence. See Md.Cts. & Jud.Proc. § 9-301. In this respect, we are convinced the trial judge erred.
Up to the time of trial, and throughout the extensive efforts to locate co-defendant, defense counsel and the court had been led to believe that co-defendant was under the jurisdiction of the federal government pursuant to the Federal Witness Protection program. Although it plainly was early on within the power of the prosecutor to ascertain this, he made no effort to do so. Even when directed by the trial court to do so in response to defendant's initial motion, the response was equivocal  that is he could neither confirm nor deny her entry into the program. It was not until the day the trial commenced that the prosecutor verified that co-defendant was not in "any" federal program. At this point, we do not tarry long with admonitions upon the prosecutor's delay in obtaining that information.
We concede that a potential witness placement in the Federal Witness Protection program poses substantial jurisdictional problems with the enforcement of a defendant's constitutional right to compulsory process. See Commonwealth of Pa. v. Lahoud, 339 Pa.Super. 59, 488 A.2d 307, 311-12 (1985). But co-defendant is in *247 no such program. As the trial judge recognized, but did not act on, that changes the picture.
The prosecutor contends that, although not within the protection of the federal program, the trial court had no authority to compel out-of-state co-defendant's attendance and no authority to declare a mistrial. Our rejection of this contention is colored by the fact that her testimony was crucial to defendant's defense coupled with what we consider to be a clear lack of any good-faith diligence on the prosecutor's part.
Preliminarily, we observe that the inherent power of the court to fashion needed and appropriate remedies to meet particular circumstances is without question and is as expansive as the need and circumstances require. State v. Abbati, 99 N.J. 418, 427-29, 493 A.2d 513 (1985). Included in such remedies is the dismissal of criminal charges. "It has long been recognized that the judiciary has the inherent power to dismiss criminal charges, particularly where the prosecution of charges would violate the defendant's constitutional rights." State v. Gaffey, 92 N.J. 374, 383-84, 456 A.2d 511 (1983). And see State v. Laganella, 144 N.J. Super. 268, 365 A.2d 224 (App.Div.), appeal dismissed, 74 N.J. 256, 377 A.2d 652 (1976).
We recognize that this power is not limitless. See United States v. Santtini, 963 F.2d 585, 596-97 (3rd Cir.1992) (the judiciary may not impose its personal and private notions of "`fairness' on law enforcement officials, but does have a limited authority to affect prosecutorial actions when those actions are taken in violation of the Constitution ... [But] [a]s a general matter, even when actions by the prosecutor appear to deprive a criminal defendant of his constitutional right to present a defense, no remedy will lie for such infringement absent a showing that the government has caused unavailability of material evidence and has done so in bad faith."). And see United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) (government's deportation of two witnesses who were illegal aliens did not warrant dismissal of indictment where government's determination that *248 the witnesses did not possess evidence favorable to defendant was not made in bad-faith).
Our courts have, however, recognized the paramount importance of a criminal defendant's federal and state constitutional right of compulsory process and have not been shy in fashioning remedies for perceived deprivations thereof. See State v. Fort, 101 N.J. 123, 131-32, 501 A.2d 140 (1985). There the Supreme Court reversed a conviction where co-defendants could not be called as witnesses for defendant because of a "no testimony" plea agreement imposed by the prosecutor as a condition of co-defendants' plea. In concluding that the "no testimony" agreement violated defendant's constitutional rights to due process and to present witnesses in his favor, the Supreme Court observed that "[u]nderlying this conclusion is our belief that the trial, although inevitably an adversarial proceeding, is above all else a search for truth. That quest is better served when the State does not suppress the truth by sealing the lips of witnesses."
And we have observed that the constitutional right to compulsory process must be "expansively applied" and "hence that `[t]he defendant's right of compulsory process is not limited to the subpoena power alone but extends to other coercive processes at the State's disposal ...'" State v. King, 164 N.J. Super. 330, 337, 396 A.2d 354 (App.Div. 1978), certif. denied, 81 N.J. 54, 404 A.2d 1154 (1979) (quoting Westen, Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases, 91 Harv.L.Rev. 567, 588 (1978)). We there held that "implementation of defendant's constitutional right here required not only his right to subpoena the witness but also the exercise of the court's power to enforce the subpoena," ibid, and concluded that the trial judge erred in refusing to issue an arrest warrant for a material defense witness who refused to comply with defendant's subpoena.
Here we are dealing with an out-of-state witness. But, critically, one that is not subject to the federal witness protection program. We need not, then, concern ourselves with the jurisdictional limitations that might be posed by that program. N.J.S.A. *249 2A:81-20 provides a procedure pursuant to which defendant can exercise his constitutional right without jurisdictional proscription. Application of that statute requires that the witness be material and that her address be known. See State v. Smith, 87 N.J. Super. 98, 103-04, 208 A.2d 171 (App.Div. 1965). It is undisputed that co-defendant is a material witness. The real dilemma is defendant's inability to obtain her address so that the process required under the Uniform Witness Act can be served. And we place that dilemma directly at the feet of the prosecutor.
We do not necessarily do so because the record reveals any misconduct or intentional withholding of information within the parameter of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). But as we have repeatedly stated, a prosecutor is not an advocate. His primary function is "is not to convict, but to see that justice is done." E.g. State v. Farrell, 61 N.J. 99, 104-05, 293 A.2d 176 (1972). See State v. Smith, 269 N.J. Super. 86, 92, 634 A.2d 576 (App.Div. 1993), certif. denied, 137 N.J. 164, 644 A.2d 612 (1994). Once it was determined that co-defendant was not subject to the witness protection program and determined so late in the proceeding, we can discern of no reason why the prosecutor, in response to the earlier order that it ascertain her whereabouts, could do no more than ascertain that she was in Maryland and did not intend to return to New Jersey. At the very least, her absconding from probation should have triggered some more effort to ascertain her actual address. Regardless of whether she was cooperating with the D.E.A., nothing that has been presented to us would suggest the prosecutor is somehow legally precluded from ascertaining co-defendant's address so that defendant at the least can use the Uniform Witness Act to obtain her presence. Cf. State v. Florez, 134 N.J. 570, 580-81, 636 A.2d 1040 (1994) (identity and address of informant who was an active participant in drug offense and material witness must be disclosed); State v. Hunt, 184 N.J. Super. 304, 310, 445 A.2d 1186 (Law Div. 1981) (State's failure to provide address of informant who was crucial to the defense and then responding that it no *250 longer possessed the information, along with other discovery misconduct, required dismissal of indictment). But see Ferrari v. U.S., 244 F.2d 132, 141-42 (9th Cir.), cert. denied sub nom. 355 U.S. 873, 78 S.Ct. 124, 2 L.Ed.2d 78 (1957) (government was not obligated to find defendant's witness where witness' unavailability was not the result of government's "suggestion, procurement, or negligence...."); State v. Stewart, 641 P.2d 895, 897 (Ariz. App. Ct. 1982) (unavailability of deputy sheriff as a result of a previously scheduled leave of absence with no forwarding address did not deny defendant constitutional right to compulsory process where the sheriff's absence was not caused by the State); State v. Davis, 293 N.W.2d 885, 887-88 (S.D. 1980) (State's good-faith effort to obtain witness' testimony was not negated by failure to use Uniform Act where witness' address was unknown and witness' prior testimony was, therefore, admissible); State v. Smith, 87 N.J. Super. at 102-03, 208 A.2d 171 (constitutional right of compulsory process does not obligate State to compel witness' attendance who cannot be located within its jurisdiction and is not a guarantee that a witness requested by defendant will be produced at trial); State v. Jones, 57 N.J. Super. 260, 266-67, 154 A.2d 640 (App.Div. 1959).
Compelling the prosecutor to engage in good-faith diligence to ascertain the whereabouts of a material out-of-state witness is not without precedence in this State. In State v. Hamilton, 217 N.J. Super. 51, 524 A.2d 1281 (App.Div.), certif. denied, 108 N.J. 581, 531 A.2d 1355 (1987), we reversed an armed robbery conviction following a prior reversal and retrial. At the retrial, the State was permitted to use the prior testimony of a critical witness claiming the witness was "somewhere in Virginia" and unavailable. Efforts of the State consisted of its investigator contacting the witness' mother who would not provide his address and when it was learned that he was receiving welfare, contacting the Richmond Social Service Department which refused to disclose the address. On the basis of this, the State asserted that the witness was beyond the jurisdiction of the trial court and that the State was not able to procure his attendance. We disagreed. Pointing *251 to the Uniform Witness Act, we noted that the State failed to invoke its provisions to obtain the presence of the witness. The State claimed that it could not do so because "it had no information as to [the witness's] exact whereabouts...." Id. at 55, 524 A.2d 1281. In response to this, we said:
We are unpersuaded that the State acted with due diligence to procure Bunn's attendance. It appears to us that it did little more than make a number of telephone inquiries in New Jersey and of people in Virginia as to Bunn's whereabouts and thereafter acquiesced in their refusal to cooperate.
The State's investigation should not have been so easily thwarted. No effort was made to enlist the aid of local police or prosecuting authorities in the area of Richmond, Virginia to locate the witness or to secure the needed information from the witness' mother by any form of testimonial compulsion. Nor was any attempt made to locate Bunn through the Richmond public school authorities. Indeed, the State's investigator never even visited Virginia.
... The Supreme Court [of the United States] has also said that there are "few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." Pointer v. Texas, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 927 (1965).
[Id.].
And see State v. Maben, 132 N.J. 487, 501-02, 626 A.2d 63 (1993); State v. Roman, 248 N.J. Super. 144, 149, 590 A.2d 686 (App.Div. 1991) (where the Uniform Witness Act has been adopted by another state, it is not beyond the power of the trial court to compel appearance of a witness through the procedures of that Act). Accord Barber v. Page, 390 U.S. 719, 723, 88 S.Ct. 1318, 1321, 20 L.Ed.2d 255 (1968) (while the fact that a witness was outside a court's jurisdiction may at one time have excused the prosecutor from producing the witness, "developments like the uniform act" have "increased cooperation between the states themselves and between the states and the federal government" requiring prosecutors to engage in diligent efforts to produce witnesses that may be beyond the court's jurisdiction). See McCormick on Evidence § 253 at 756-57 (3d Ed. 1984).
We recognize that these cases deal with the State's burden to locate out-of-state witnesses where it seeks to use their unavailability to justify admission of hearsay evidence. And we further *252 recognize that generally a prosecutor does not have an obligation to obtain witnesses for a defendant "in the absence of a showing that such witnesses were made unavailable through the suggestion, procurement, or negligence of the [prosecutor]." Ferrari, supra, 244 F.2d at 141. That burden is, however, appropriate when, as we view the circumstances here, the State seeks to pursue charges against a defendant after it has, even if by inaction, permitted a crucial defense witness to leave the State's jurisdiction. And by inaction, we point not only to the prosecutor's total lack of effort even to ascertain whether the witness was protected by a governmental program, but to what is plainly an acquiescence in the co-defendant's absconding from her probationary conditions. That acquiescence is as much a "sealing the lips of [the] witness" as was the "no testimony" agreement in State v. Fort, supra, 101 N.J. at 131, 501 A.2d 140. Moreover, co-defendant's absconding from probation impinges upon the trial court's sentencing integrity. Most certainly her return to New Jersey could have been triggered by a violation of probation proceeding, a form of relief that defense counsel had requested. See N.J.S.A. 2C:45-3a(1). Within that context, we see no reason why the prosecutor could not have been directed to exercise sufficient diligence to ascertain her whereabouts so that defendant's constitutional rights would not have been so easily trammelled.
Finally, we briefly touch upon the State's contention that defendant was not harmed because the substance of the co-defendant's exculpatory statement was presented to the jury through the testimony of defendant's then attorney to whom the statement was made and to which the prosecutor did not object. But as the defense counsel exclaimed when presented with this substitute and asked to consent: "... it's like inviting a hungry man to a banquet and giving him the appetizer and sending him out the door." One needs only to read the transcript of the attorney's trial testimony to realize just how poor a substitute it was. When, for instance, the witness attempted to describe co-defendant's *253 demeanor at the time she made the statement and explain that "she was quite irate," the trial judge interjected, "No, forget that" and sustained the prosecutor's objection to the subsequent question "was there any indication you had either in her voice or demeanor that she was forced or being coerced?" Further, although objected to and sustained, the prosecutor blatantly confronted the public defender with the proverbial "do you beat your wife question" by asking "Ma'am, do your clients normally tell you the truth?" It was, moreover, fairly effectively brought out that her conversation with co-defendant was all of five minutes and that the conversation was not in the form of testimony in court or under oath. One needs little imagination to know what weight the jury gave to this testimony.
That is not to say that co-defendant's own testimony would have produced any better results. But the point is that defendant has a constitutional right to take that chance. We can see no countervailing prosecutorial or State interests that would override that right. More particularly, under the circumstances here, we do not think it is enough for the prosecutor to take the position that he does not know of co-defendant's address and will not engage in good-faith efforts to obtain it to the end that the Uniform Witness Act cannot be utilized.
We take note of the possibility that co-defendant is an informant for the D.E.A. and that disclosure of her address may raise some safety concerns. Based upon what has been presented to us, and considering the materiality of her testimony to the defense, we do not think such concerns would override the defendant's rights. Cf. State v. Florez, supra, 34 N.J. 570, 636 A.2d 1040. But we also note the procedural protection that is afforded an out-of-state witness in the foreign state, see N.J.S.A. 2A:81-19; Md.Cts. & Jud.Proc. § 9-302.
Reversed and remanded for further proceedings. If the prosecutor wishes to retry defendant, co-defendant's current address must be provided so that her presence can be compelled under the Uniform Witness Act. Since the prosecutor has never *254 taken the position that there is some viable impediment to her production, aside from the Federal Witness Protection Program, which turns out not to be the case, we will not address that event. Simply stated, the prosecutor has the choice of obtaining the necessary information to produce her at retrial, or accept a dismissal of the charges.