OPINION OF THE COURT
David Goldstein, J.
This is a motion by defendant, albeit made under the wrong indictment number, to inspect the Grand Jury minutes and, upon that inspection, to dismiss the indictment, which charges attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree.
Actually, the motion seeks dismissal as a remedy for prosecutorial misconduct in connection with the Grand Jury presentment pursuant to CPL 190.55 and 210.35 (5), namely, the prosecutrix’ failure to inform the Grand Jury that the complainant had recanted his identification and initial report of defendant’s involvement in the crime. At the time the case was presented to the Grand Jury, complainant had written a letter, absolving defendant of any involvement in the commission of the crimes the subject of this indictment. He contends that this exculpatory evidence should have been disclosed to the Grand Jury and that the failure to do so amounts to prosecutorial misconduct, which so infected the process so as to mandate dismissal of the indictment.
In opposition, the District Attorney argues that there was no affirmative obligation to present exculpatory evidence and further, that the complainant’s recantation had been coerced (although not directly by defendant, since he has been incarcerated). According to the prosecutor, the threats allegedly used to extract the recantation could not be disclosed, since disclosure would have been prejudicial to the defendant, amounting to improper proof of an uncharged crime with no evidence that this defendant was involved in the coercion.
As has been frequently observed, the traditional function of the Grand Jury is to ensure that, "before an individual may be publicly accused of a crime and put to the onerous task of defending himself from such accusations, the State must convince a Grand Jury composed of the accused’s peers that there exists sufficient evidence and legal reason to believe the accused guilty” (People v Iannone, 45 NY2d 589, 594; see also, People v Lancaster, 69 NY2d 20, 25, cert denied 480 US 922). Consistent with this purpose, it has been recognized that the Grand Jury performs a dual role — investigating criminal ac *63 tivity to ascertain if there is sufficient evidence to accuse one of a crime, and "protecting individuals from needless and unfounded prosecutions” (People v Lancaster, supra, at 25, and cases cited).
Similarly, the prosecutor serves a dual role as both advocate and public officer and, insofar as concerns the Grand Jury procedure, is charged not only with the duty to secure indictments, but also to see that justice is done (People v Lancaster, supra, at 26; People v Pelchat, 62 NY2d 97, 105). In terms of his responsibility with respect to this duality of function, the Court of Appeals observed in People v Pelchat (supra, at 105106): "In his position as a public officer he owes a duty of fair dealing to the accused and candor to the courts, a duty which he violates when he obtains a conviction based upon evidence he knows to be false. Such misconduct may impair a defendant’s due process rights and require a reversal of the conviction * * * It goes without saying that this duty also rests upon the prosecutor during pretrial proceedings (see, e.g., People v Gleaslen, 54 NY2d 510; People v Cwikla, 46 NY2d 434) and the proceedings relating to indictment both at presentment and afterwards. 'It is a serious matter for any individual to be charged with crime whether the charge be true or false’ and it is as important ' "that he be fairly and justly accused * * * as that he be fairly and impartially tried” ’ (People v Minet, 296 NY 315, 322-323, quoting Matter of Gardiner, 31 Misc 364, 375).”
While no case dealing with the precise issue raised here has been cited or found, People v Pelchat (supra) is instructive. In that case, defendant was convicted of criminal possession of marihuana in the first degree and, after pleading guilty, sought dismissal of the indictment upon the ground that the only evidence before the Grand Jury which connected him with the crime was the testimony of a police officer, who had subsequently told the prosecutor that he could not identify defendant as a participant and that he had misunderstood the question which had been asked before the Grand Jury. The Court of Appeals agreed, holding that the prosecutor had acted improperly because he knew of the mistake before the plea, should have resubmitted the case to correct the proceedings and that the failure to do so mandated dismissal of the indictment (62 NY2d, at 99): "The Grand Jury could indict only upon legally sufficient evidence and when the prosecutor learned of the error while the proceedings were still pending, *64 before defendant’s plea, he was obliged to correct the error by obtaining a new accusatory instrument.”
Thus, the court unanimously held that the indictment was fatally defective, since the Grand Jury had no evidence "worthy of belief’ that defendant had committed the crime, observing (People v Pelchat, supra, 62 NY2d, at 107): "Possessing the knowledge he did before the entry of the plea, the prosecutor was duty bound to obtain a superseding indictment on proper evidence or to disclose the facts and seek permission from the court to resubmit the case (see CPL 200.80; 210.20, subd 4). Just as he could not sit by and permit a trial jury to decide a criminal action on evidence known to be false, he could not permit a proceeding to continue on an indictment which he knew rested solely upon false evidence”.
While the District Attorney would argue, and correctly so, that he was not obligated to search for evidence beneficial to the defendant, nor to present all such evidence favorable to the accused (People v Lancaster, supra, at 25-26; People v Isla, 96 AD2d 789), nevertheless, as noted, his role as public officer carries with it an obligation of good faith and fair dealing visá-vis the accused.
Thus, it has been held that the prosecutor must instruct the grand jurors as to exculpatory but not mitigating defenses, i.e., defenses which, if believed, would result in a finding of no criminal liability. Applying this standard, in People v Valles (62 NY2d 36, 38) the Court of Appeals held that "the question of whether a particular defense need be charged depends upon its potential for eliminating a needless or unfounded prosecution.” Similarly, in People v Lancaster (supra, at 26) the court reemphasized that the prosecutor "need not instruct the Grand Jury as to every conceivable defense suggested by the evidence, but ordinarily need instruct only as to those 'complete’ defenses which the evidence will support (People v Valles, 62 NY2d 36, 39, supra)."
Applying the distinction between exculpatory and mitigating defenses, Valles (supra) had held that, in a murder prosecution, it was necessary to instruct the Grand Jury as to the defense of justification, which was exculpatory in nature, whereas the mitigating defense of extreme emotional disturbance need not be charged. Similarly, Lancaster (supra) held that the People had no obligation to instruct the Grand Jury as to a potential defense of mental disease or defect and no duty to present evidence within their possession relating to defendant’s psychiatric history.
*65 In my view, the very same duty of good faith and fair dealing obligates the prosecutor to disclose to the Grand Jury, at the time of presentment, facts known to him which could wholly exculpate a defendant or person who is the target of the investigation or inquiry. This is the essence of the holdings, not only in Pelchat (supra), but also in Lancaster (supra) and Valles (supra). Indeed, in People v Isla (supra), notwithstanding the affirmance, the Appellate Division, First Department, recognized that the Grand Jury "was entitled to the full story so that it could make an independent decision that probable cause existed to support an indictment.” (96 AD2d, at 789.)
Thus, clearly, the prosecutor would be required to disclose that the complainant or victim had recanted his or her account that defendant was the perpetrator. In Pelchat (supra), the Court of Appeals recognized that such critical evidence must be disclosed to preserve and safeguard the underlying integrity of the Grand Jury process. (See also, People v Gordon, NYLJ, Dec. 24, 1991, at 24, col 1 [Sup Ct, Kings County, Gerges, J.].) This is hardly the type of "marginally exculpatory” evidence which, it has been recognized, need not be disclosed (People v Townsend, 127 AD2d 505, 507, lv denied 69 NY2d 1011).
What distinguishes the present situation from the cited cases, however, and what makes this case most unique in terms of the legal issue is that, here, it is alleged that, before the Grand Jury convened, complainant told the District Attorney that the recantation was extracted under duress and after threats had been directed against him. According to the prosecutor, if this were disclosed, it would improperly place before the Grand Jury proof of an uncharged crime, namely, coercion or tampering with a witness, which, it is claimed, would be improper and most prejudicial to the defendant.
Upon this basis, the People contend that this case ought to be controlled by the general proposition that the prosecutor is not obliged to present to the Grand Jury all evidence in his possession which is favorable to the accused (People v Lancaster, supra, at 25-26; People v Lloyd, 141 AD2d 669; People v Isla, supra; see also, People v Stepteau, 178 AD2d 376), particularly where as here, full disclosure could be harmful to the defendant.
Nevertheless, in my view, application of this principle to the facts of this case, regardless of any good intentions or motives *66 by the Assistant District Attorney who presented the case, flies in the face of the underlying purpose and policy of the Grand Jury system. Historically, the Grand Jury "has acted as a buffer between the State and its citizens, protecting the latter from unfounded and arbitrary accusations” (People v Calbud, Inc., 49 NY2d 389, 396). Its prime function "is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution” (People v Calbud, Inc., supra, at 394). However, in satisfaction of this underlying policy, it is critical that the Grand Jury be presented with all evidence, including any exculpatory facts, which, if disclosed, would have materially influenced the grand jurors and logically caused them to change their ultimate determination (People v Monroe, 125 Misc 2d 550, 559).
Review of the reported decisions reflects two quite distinct patterns from which the operative legal standard is readily apparent. A prosecutor is duty bound to present to a Grand Jury both affirmative defenses and exculpatory evidence "where revelation of such information likely would have resulted in dismissals by the Grand Jury” (People v Hill, 122 Misc 2d 895, 897), i.e., evidence and defenses, which, if believed, would logically result in a finding of no criminal responsibility. This follows naturally from the prevailing rule which mandates that exculpatory but not mitigating defenses be submitted to the Grand Jury (People v Lancaster, supra; People v Valles, supra). Plainly, a contrary determination would undermine and impinge the very integrity of the entire Grand Jury process.
On balance, there was a failure to adhere to proper procedure here. The prosecutrix presented the Grand Jury with an incomplete and distorted factual scenario, which so infected the underlying sanctity of the process as to mandate dismissal of the indictment, with leave to re-present.
In the absence of disclosure of the complainant’s recantation (that defendant "had no involvement with the shooting”), which was made but two weeks after the crime and 2 Vi weeks before presentment, the Grand Jury was given a far different case. The victim and the defendant had known each other for about five years, having lived in the same apartment complex. According to complainant, the shooting occurred when he did not return money which he had been holding for defendant and which he had given to defendant’s mother at the latter’s *67 request. He testified to being shot with a .25 automatic in the legs and stomach, which required extensive surgery.
Complainant’s familiarity with defendant, along with his positive identification, posed an exceedingly strong case. Whether the same result would obtain had the Grand Jury been told that, two weeks after the crime, complainant denied that defendant had been involved in the shooting, does not appear. It is certainly a material disclosure, which could have a direct bearing on the charges, especially considering that the victim and defendant had known each other for some time.
Under all of the circumstances, with due consideration for the duty of fair dealing which is owed to the accused in conjunction with the Grand Jury process, the failure or refusal to disclose critical exculpatory evidence, that the complainant had recanted his story, proclaiming that defendant had no involvement in the shooting, was error. Although it is claimed that the recantation was the product of force and duress, that circumstance could have been and should have been explained to the grand jurors, with whatever curative instruction was deemed to be necessary. In my view, the failure to do so infected the underlying integrity of the proceeding so as to mandate dismissal of the indictment, with leave to re-present.
Accordingly, the motion to dismiss is granted and the indictment is dismissed, with leave to the District Attorney to resubmit the case to the Grand Jury.