# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1543-20

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

C.A.T-P.,

    Defendant-Respondent.

_____

Submitted August 23, 2021 – Decided August 30, 2021

Before Judges Whipple and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 20-01-0011.

Michael H. Robertson, Somerset County Prosecutor, attorney for appellant (Rory A. Eaton, Assistant Prosecutor, of counsel and on the briefs).

Joseph E. Krakora, Public Defender, attorney for respondent (Tamar Y. Lerer, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

The State appeals from the Law Division's dismissal of an indictment charging defendant C.A.T-P.[1] with: 1) third-degree aggravated assault—strangulation, N.J.S.A. 2C:12-1(b)(13); 2) third-degree aggravated assault—significant bodily injury, N.J.S.A. 2C:12-1(b)(12); 3) fourth-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(2); and 4) fourth-degree unlawful possession of a prohibited device—hollow point bullets, N.J.S.A. 2C:39-3(f)(1).

The motion judge dismissed the indictment on two grounds. First, he concluded it was in the "interests of justice" to dismiss the charges as the State's ability to establish defendant's guilt beyond a reasonable doubt would "ultimately fail" because defendant was deported and not presently located in the United States and the victim, M.A.N-Z., expressed her intention not to testify against him. Second, the court noted that defendant was available for a "considerable amount of time" before being deported and the State failed to take appropriate measures to secure his appearance for trial prior to his removal from the United States.

On appeal, the State contends the court abused its discretion by dismissing the indictment, arguing that it improperly evaluated the strength of the State's

[1] We use initials to protect M.A.N-Z.'s privacy. R. 1:38-3(c)(12).

proofs and made incorrect assumptions regarding the ability of the State to introduce admissible evidence establishing defendant's guilt. We agree and reverse and remand with directions that the court reinstate the indictment.

I.

The State's charges stem from an incident that occurred during the early morning hours of November 23, 2019, when officers from the North Plainfield Police Department responded to a local residence based upon a report of an assault potentially involving a handgun. The officers met with the victim, M.A.N-Z., who advised them that she lived with defendant, her boyfriend, and their infant child. She also informed the officers that defendant had taken the child to their neighbor's apartment.

M.A.N-Z. stated that defendant physically assaulted her after her friend left the apartment earlier that night, and in response to her friend allegedly insulting defendant. She explained that while in the common hallway defendant pushed her against the wall and strangled her, obstructing her breathing. The officers observed visible marks on her neck, which they photographed.

M.A.N-Z. told the officers that she resisted the assault and ran into the bathroom for safety, where she was unable to call the police because she did not have her cell phone in her possession. After defendant unsuccessfully attempted

to break down the bathroom door, he left the residence. At that point, M.A.N-Z. left the bathroom where she encountered defendant who had returned to the apartment. Defendant allegedly retrieved a handgun from the bedroom, showed it to M.A.N-Z. and stated, "I have a gun." M.A.N-Z. again fled to the bedroom, locked the door, and screamed for help.

An investigating officer captured M.A.N-Z.'s statements on his body camera. M.A.N-Z. subsequently consented to a search of the apartment where the police seized three .380 caliber bullets, one of which was a hollow point, in the bedroom dresser.

After defendant was arrested, M.A.N-Z. obtained a temporary restraining order (TRO) against him. The police conducted a search of defendant's vehicle pursuant to a search warrant, but were unable to locate the handgun allegedly used by defendant in the assault.

M.A.N-Z. later gave a recorded statement which was factually inconsistent with what she alleged on November 23, 2019. For example, M.A.N-Z. claimed to be unsure if defendant displayed a handgun, and stated that her friend allegedly insulted her which angered defendant. Further, M.A.N-Z. did not reference defendant's purported attempt to break down the bathroom

A-1543-20

door. She continued to maintain, however, that defendant strangled and assaulted her.

Defendant was detained prior to trial because the court concluded that no combination of pre-trial conditions would assure the protection and safety of other members of the community. On this point, the court noted that "defendant strangled the victim . . . with sufficient force to leave marks," and further expressed concern about the "[p]otential for witness intimidation."

On November 26, 2019, M.A.N-Z. informed the court that she wanted to "withdraw all the charges [she] filed against defendant," and thereafter voluntarily dismissed the TRO. Defendant subsequently moved to reconsider the court's pre-trial detention order, an application that the court granted, releasing defendant under several conditions, including that he appear for all scheduled court proceedings and not commit any offenses while released.

In granting defendant's application, the court explained that M.A.N-Z.'s dismissal of the TRO constituted a material change in circumstances warranting reconsideration of the court's earlier pretrial confinement order. The court explained there was "less of a risk of violence to the victim than at the original time of the hearing."

5

Defendant was subsequently taken into custody on a United States Immigration and Customs Enforcement (ICE) detainer. An immigration judge later issued an order for defendant's removal from the United States to El Salvador, his country of origin. Upon learning of the removal order and defendant's scheduled deportation, the State moved to revoke defendant's pretrial release. Defendant, however, was deported prior to the revocation hearing.

Defendant subsequently moved to dismiss the indictment which he supported by a notarized affidavit from M.A.N-Z., in which she stated she was not in fear of defendant, did not wish to testify against him, requested that the prosecutor dismiss the charges, and claimed the November 23, 2019 assault was "an aberration." Notably, however, M.A.N-Z. never recanted her statements that defendant assaulted her, but simply noted that the incident was "the only time this has ever happened."

Defendant argued that the Confrontation Clause[2] prevented the State from relying on M.A.N-Z.'s recorded statements and, as she did not wish to testify, the State could not support any of the charges, as the sole evidence against defendant—her recorded statements—constituted inadmissible hearsay. In

---

[2] U.S. Const. amend. VI.

opposing the motion, the State argued it was inappropriate to consider the application in light of defendant's absence from the proceeding, and further stated that the court should issue a bench warrant, and the matter re-scheduled once defendant's appearance was secured.

The State also maintained that defendant failed to provide any cognizable legal basis to dismiss the indictment and his claim that M.A.N-Z. did not intend to cooperate with the State at the time of trial was hypothetical. As the State explained, it had "no indication from the victim that she would not cooperate with a subpoena should one issue."

The court granted defendant's application and dismissed the indictment. In an October 27, 2020 order and written opinion, the court stated, that "[o]ut-of-court statements interdicted by the Confrontation Clause include both testimonial statements elicited by the police during interrogations . . . and testimonial statements volunteered to the police." The court further noted that "[a] statement about a relevant past event made to a police officer conducting a criminal investigation meets the Sixth Amendment's formality and solemnity requirement for a testimonial statement."

In making its decision, the court relied upon the following language from Hammon v. Indiana, 547 U.S. 813, 829-30 (2006), in which the United States

7

Supreme Court concluded that certain statements to law enforcement were testimonial and subject to the Confrontation Clause:

> [T]he victim's statement to the police in the affidavit describing the domestic-violence events were testimonial for among the following reasons: (1) the police interrogation of the victim "was part of an investigation into possibly criminal past conduct"; (2) the police inquiry was not an effort to determine "'what [was] happening' but rather 'what happened'"; (3) "there was no immediate threat" to the victim because she had been separated from her abuser and therefore "no emergency [was] in progress."

The court determined that "[t]he police report, with regard to anything the witness said to the officer, would be inadmissible hearsay." Consequently, the court concluded "[s]ince the defendant was deported and the [State's] primary witness will not testify at trial, the court believes that the best course, in the interest of justice, is to dismiss the indictment." The court also found that defendant had been available prior to deportation for a considerable amount of time and that "[p]rocedural remedies were not utilized with respect to seeking ICE deferment or staying removal until after the State's criminal trial."

After the court denied the State's motion for reconsideration, it filed this appeal arguing:

A-1543-20

POINT I

THERE WERE NO LEGAL GROUNDS FOR DISMISSAL OF THE INDICTMENT.

POINT II

SUFFICIENT EVIDENCE EXISTS TO SUSTAIN THE INDICTMENT.

POINT III

A BENCH WARRANT SHOULD ISSUE FOR DEFENDANT.

II.

"[T]he decision whether to dismiss an indictment lies within the discretion of the trial court, and that exercise of discretionary authority ordinarily will not be disturbed on appeal unless it has been clearly abused." State v. Hogan, 144 N.J. 216, 229 (1996) (citations omitted). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). When a trial court's decision turns on a legal question, we review that determination de novo, without deference to the trial court's interpretation. State v. Twiggs, 233 N.J. 513, 532 (2018) (citation omitted).

An indictment is presumed valid, see State v. Perry, 124 N.J. 128, 168 (1991), and should not be dismissed unless "manifestly deficient or palpably defective," Hogan, 144 N.J. at 229. See also State v. Tringali, 451 N.J. Super. 18, 27 (App. Div. 2017) ("A trial court should only dismiss an indictment on the 'clearest and plainest' grounds and only when it is clearly defective." (quoting State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 18-19 (1984))).

"The grand jury's role is not to weigh evidence presented by each party, but rather to investigate potential defendants and decide whether a criminal proceeding should be commenced." Hogan, 144 N.J. at 235. Accordingly, a prosecutor seeking an indictment is solely required to "present a prima facie case that the accused has committed a crime." Id. at 236. An indictment should not be dismissed "[a]s long as 'some evidence' on each of the elements of the offenses is presented and there is nothing that detracted from the fairness of the grand jury proceeding." State v. Scherzer, 301 N.J. Super. 363, 428 (App. Div. 1997) (citations omitted).

Additionally, grand jury proceedings carry a "presumption of validity," as prosecutors enjoy "broad discretion in presenting a matter to the grand jury." State v. Smith, 269 N.J. Super. 86, 92 (App. Div. 1993). The State's power to indict an individual is not limitless, however, as a "prosecutor, contrary to an

ordinary advocate, has a duty to see that justice is done." State v. Polasky, 240 N.J. Super. 139, 146 (App. Div. 1990) (citations omitted). "He is not to prosecute, for example, when the evidence does not support the State's charges." Ibid.

Further, "[t]he court should evaluate whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it." State v. Morrison, 188 N.J. 2, 13 (2006) (citation omitted). Therefore, "a defendant who challenges an indictment must 'demonstrate that evidence is clearly lacking to support the charge.'" State v. Graham, 284 N.J. Super. 413, 417 (App. Div. 1995) (quoting State v. McCrary, 97 N.J. 132, 142 (1984)). Dismissal of an indictment is a "last resort because the public interest, the rights of victims and the integrity of the criminal justice system are at stake." State v. Williams, 441 N.J. Super. 266, 272 (App. Div. 2015) (quoting State v. Ruffin, 371 N.J. Super. 371, 384 (App. Div. 2004)).

III.

As noted, the State contends the court erred in dismissing the indictment. Specifically, the State asserts that there was no legal basis for the court's

11

decision and that there was sufficient evidence in the record to sustain the indictment.

Defendant claims that the interests of justice required the dismissal of the indictment because: 1) significant resources have been, and will be, spent on a "futile exercise" as defendant is barred from returning to the United States; 2) defendant's right to a speedy trial would be violated if the State is permitted to keep the indictment "open indefinitely"; and 3) without M.A.N-Z.'s testimony the State is unable to prosecute the case.

We agree with the State that the court abused its discretion in dismissing the indictment as there was no legal defect with the presentment and the record presented to the court fully supports the charges. Hogan, 144 N.J. at 229; Morrison, 188 N.J. at 12. Instead, the court mistakenly based its decision on its belief that the State would be unable to proceed at trial because M.A.N-Z. expressed her intention to refuse to testify, and the State would have to rely on her recorded statements, which it determined was impermissible hearsay. As the court explained:

> [T]he [c]ourt need not go blindly down a path that will ultimately fail. The [c]ourt is aware, and the State would have to agree, that if the trial were to happen today, the prosecution could not put on a case. In effect, there is no witness to testify against the defendant. The police report, with regard to anything

12

> the witness said to the officer, would be inadmissible hearsay. There are no available exceptions to the rule against hearsay in this instance. The [c]ourt must weigh all facts specific to a particular case when arriving at its decision. First, the defendant is not present, and this is not by his choosing; he was deported. Second, the witness against the defendant, has written letters to the prosecution, and gave a statement to defense counsel that she does not want to testify and that she does not want the defendant prosecuted. Third, the defendant was available for a considerable amount of time, held on an ICE detainer, at Somerset County Jail, before being deported. Procedural remedies were not utilized with respect to seeking ICE deferment or staying removal until after the State's criminal trial. The defendant has not been deported. Since the defendant was deported and the [p]rosecutor's primary witness will not testify at trial, the [c]ourt believes that the best course, in the interests of justice, is to dismiss the indictment.

This conclusion, however, was improperly based on the court's evaluation of State's anticipated proofs, and not on the validity of the indictment, the proofs submitted at that proceeding, or the decision of the grand jury to indict defendant. In doing so, the court failed to view the facts in the light most favorable to the State and address whether "a grand jury could reasonably believe that a crime occurred and that the defendant committed it." Morrison, 188 N.J. at 12. As noted, the record contains ample evidence supporting the charges against defendant to survive defendant's motion to dismiss.

For example, M.A.N-Z.'s initial statement indicated that defendant pushed her against a wall and strangled her, a fact corroborated by submitted photographs depicting her injuries. M.A.N-Z. also stated that after she locked herself in a bathroom, defendant attempted to break the door down. Further, when M.A.N-Z. left the bathroom, under the belief that defendant had left, he returned to the apartment and displayed a handgun. In addition, M.A.N-Z. does not dispute that the assault occurred, in fact, she never recanted and stated in her affidavit that "this is the only time this has ever happened."

In concluding M.A.N-Z. would not testify against defendant, the court misinterpreted her notarized affidavit. Nor can we discern from the record provided to us if M.A.N-Z.'s reluctance to testify was affected by the domestic violence that the State contends defendant committed.

What is clear, however, is that the charges against defendant are serious offenses and, if proven, establish that M.A.N-Z. was a victim of domestic violence. New Jersey law is intended "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. As the Legislature declared when enacting the Prevention of Domestic Violence Act:

> The Legislature finds and declares that domestic violence is a serious crime against society; that there

14

are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence.

[Id.]

In our view, the better practice under the circumstances would be for the court to hold the State to its burden of proof at trial before dismissing these significant charges. To the extent the State intends to rely upon M.A.N-Z.'s testimony to support the charges, and she refuses to testify, the court can address the propriety, and consequences, of that decision as it relates to the State's proofs at that time, and upon a complete record.

In sum, we reverse the court's October 27, 2020 order and remand the matter for entry of an order reinstating the indictment. We do not address the State's argument in its third point whether a bench warrant should issue, and reserve that decision for the trial court on remand. Nor do we address any other potential issues attendant to defendant's prosecution not specifically raised by the parties. We do not retain jurisdiction.

15

Reversed and remanded.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                                    A-1543-20